LANGAN & NOBLE v. THE I. & M. CONS. CO. ET AL.

1. Corporations: NOTICE. A failure to comply with the requirements of sections 1076 and 1077 of the Code does not render the private property of stockholders liable for the debts of the corporation.

2. ———: BOOKS OF THE CORPORATION. Nor are the stockholders liable because of a failure to comply with the provisions of section 1078 of the Code, respecting the manner of keeping the books of the corporation.

3. ———: INDEBTEDNESS. The creating of an indebtedness exceeding two-thirds of the capital stock would not subject private property to liability.

4. ———: CONSTRUCTION COMPANY. A corporation organized with the power of constructing and operating a railway, although nominally a construction company, is a railway company within the meaning of section 1068 of the Code.

5. ———: ANOTHER COMPANY AS STOCKHOLDER: FRAUDULENT REPRESENTATION. Where one corporation becomes a stockholder in another, the officers of the former have no authority to make fraudulent representations which could subject their company to liability as a member of the latter company.

*Appeal from Jasper Circuit Court.*

WEDNESDAY, OCTOBER 23.

THE petition of plaintiffs alleges that the defendants C. R.

Peck, B. W. Davis, H. C. Cramer, and the Jasper County Coal Company attempted to form a corporation under the name and style of the Iowa & Minnesota Construction Company, to commence on the 14th day of October, 1875, and continue in force for twenty years; that the Jasper County Coal & Railway Company entering into such organization is composed of the defendants F. H. Griggs, D. S. Couch, D. L. Clark, D. Ryan, Robert Ryan and Thomas Ryan; that shortly after the organization of said company the defendants A. B. Meeker & Co. and R. M. Cherry became stockholders therein; that immediately after filing their articles of incorporation in the recorder's office of Jasper county the company proceeded to work and incur indebtedness in constructing the roadway of the Iowa, Minnesota & North Pacific Railway; that during the summer and fall of 1876, at the request of the members of said company, plaintiffs extended credit to the company for the sum of ten hundred and sixty-five dollars, for which judgments were afterward recovered; that execution has been issued against said Iowa & Minnesota Construction Company, and the execution returned wholly unsatisfied, no property being found to levy on, and said company being wholly insolvent; that said attempted incorporation was fraudulent and void, and said company only a partnership, because of the following defects and non-compliance with the statute creating and regulating corporations, to-wit:

1.   Because no notice of said incorporation was published, as required by law, within three months from the filing of the articles of incorporation in the recorder's office of Jasper county, Iowa, and the commencement of business by said company; neither were said articles recorded in a book kept for that purpose in the recorder's office.

2.   Because the notice published after the three months from said organization did not confer any power upon said association, for want of compliance with the terms of the statute.

3.   Because the notice published did not state the actual

amount of the capital stock subscribed, nor the time or conditions on which it was to be paid.

4. That no notice or copy of the by-laws of said association, with the names of all its officers appended thereto, was kept posted at their principal place of business, and subject to public inspection, nor was any such notice posted at any place or kept in the office of said company.

5. No notice of the amount of capital stock subscribed, the amount of capital actually paid in, and the amount of the indebtedness of said company, was ever posted in the office of said company, or publicly exhibited therein; but, on the contrary, such facts were kept secret and hidden from the parties extending credit to said company.

6. No notice of the transfer or issue of any shares of said company was kept posted in the office of the company, or in any manner made public.

7. No books were kept by said company showing intelligibly the original stockholders, the amount subscribed and paid by each in said company, the indebtedness of said company, the respective interests of each, the number of shares of stock issued, and to whom, and the dates and amounts of such issues and payments, etc. But the books were kept, in so far as kept at all, in such manner as to mislead and deceive as to the financial standing of said association and the indebtedness existing against it; that by the foregoing defects in organization, intentional omissions, and failure to comply with the statutory requirements to create a corporation, the said defendants were never legally incorporated, but were simply partners, associated under a company name, and are each liable as such partners for the debts incurred by said association; and that by their failure to make public the actual financial standing of said company a fraud was practiced upon the creditors of said company, and these plaintiffs and others were misled as to its financial condition, and were induced to extend credit they otherwise would not have given; and this was the more true because of the financial condition

of those members of the association residing in Jasper county, and with whom plaintiffs were personally acquainted, and by whom they were the more easily influenced.

"Plaintiffs further state that the capital stock of said company actually subscribed was the sum of forty-five thousand dollars, each of the defendants herein being subscribers to said stock, either directly or through the said coal company; that at no time has said stock been entirely paid up; that on the strength of said stock issued as herein stated said company, immediately on its organization, proceeded with the building of the line of the Iowa, Minnesota & North Pacific Railway between Newton and Monroe, and continued work from November 1, 1875, to December 18, 1876; that during the summer and fall of 1876 said company incurred an indebtedness largely exceeding two-thirds of its capital stock, and at the time its indebtedness was incurred to plaintiffs its outstanding indebtedness was largely in excess of two-thirds of its capital stock, and so continued; that while said company were so largely indebted and actually insolvent, these plaintiffs were induced by the representations of the different members of said organization to extend further credit thereto; that by the representations of the members of said company as to its financial standing, and the financial backing it had, and that its obligations would be promptly paid, and the inability of plaintiffs to discover its actual financial condition, because of the secrecy maintained by the officers of said company and its members, and their failure to comply with the law in regard to publicity, and their unwillingness to exhibit its true condition, a fraud was practiced upon plaintiffs, and a credit procured from them which otherwise would not have been given; that plaintiffs were repeatedly assured by the members of said company that it was abundantly able to liquidate its indebtedness, and that they (the members) would see that it was done, and that plaintiffs should suffer no damage or injury by extending credit thereto; that at the time the credit of plaintiffs to said company was procured, and for which the

DECEMBER TERM, 1878.            321

Langan & Noble v. The I. & M. Cons. Co.

indebtedness herein sued for was obtained, the said company was insolvent, all of which was well known to each of the defendants, and that by holding it out to the public as a solvent organization, a gross fraud was perpetrated upon the plaintiffs by the active co-operation and participation of each of the defendants.

"Plaintiffs further state that as part compensation for building said railway between Newton and Monroe the defendants were to get one hundred and seventy-five thousand dollars of bonds of said railroad company, and that, by the terms of the contract, said bonds were to be issued when said road was completed, and that the defendant F. H. Griggs was by the railroad company made trustee, to deliver said bonds when said road had been fully completed by the said construction company, but that for the purpose of defrauding the creditors of said Iowa & Minnesota Construction Company said trustee caused said bonds to be delivered before said road was completed, to said construction company, and then, in fraud of his duties as trustee, he himself hastened to transfer said bonds to Hugh Riddle, or through him to the Chicago, Rock Island & Pacific Railway Company, at the nominal valuation of thirty cents on the dollar, donating accrued interest on the same solely for the purpose of keeping the same out of the reach of the creditors of said construction company, and to avoid its indebtedness, and pocketing the sum received for said bonds, and that, while so disposing of said bonds with the purpose aforesaid, and with full knowledge of all the defendants, the members of said company were promising payment to plaintiffs, and inducing them to credit said construction company, and for the further purpose of defrauding plaintiffs and others said parties, the members of said construction company, transferred to said Hugh Riddle, without any payment therefor, ten thousand dollars per mile of the stock of said road, which came to the said construction company on their contract for building said road; that said donation was made for the express purpose of keeping it out of the

hands of the creditors of said company, and for the purpose of defrauding them, said trustee being at the same time an officer of said Chicago, Rock Island & Pacific Railway Company; that each and all of the acts herein set out, and the transferring of the property of said construction company without value, were done for the purpose of defrauding the creditors of said company, and especially these plaintiffs, and they were defrauded by said acts, and the other acts, promises and omissions herein set out, out of their property to the amount of eleven hundred dollars. Wherefore petitioners pray that said Iowa and Minnesota Construction Company may be declared a co-partnership only, and that each and all of the defendants, as members of said co-partnership, may be declared liable for the indebtedness of said company, and for the value of the property of said construction company, by them fraudulently transferred to Hugh Riddle for the Chicago, Rock Island & Pacific Railway Company, without value, for the stock of said company unpaid, and for the amount due the plaintiffs, as shown by the judgments they hold against said construction company; that they have judgment against said defendants for the sum of twelve hundred dollars, and for costs of suit, and for such other and further relief as to the court may seem just in the premises."

The Jasper County Coal & Railway Company, and the defendants, Couch, Clark, D. Ryan and Robert Ryan, demurred to this petition. The demurrers were sustained, and, the plaintiffs electing to stand upon their petition, judgment was rendered against them for costs. The plaintiffs appeal.

*Sankey & Cook*, for appellants.

*Ryan Bros.*, for appellees.

DAY, J.—I. Appellants claim that the Jasper County Coal Company was a stockholder in the construction company; that as such it is liable, under section 1082 of the Code, to the amount of the unpaid installments on the stock owned by

DECEMBER TERM, 1878.                          323

Langan & Noble v. The I. & M. Cons. Co.

it, and that for that reason the demurrer of the coal company to the petition should have been overruled. The only averments of the petition to which this claim is applicable are as follows: "The capital stock of said company actually subscribed was the sum of forty-five thousand dollars, * * * each and all of the defendants herein being subscribers to said stock, either directly or through the said coal company; that at no time has said stock been entirely paid up, nor is it now." It is apparent that the allegation that said stock has not been entirely paid up can refer only to the gross sum of forty-five thousand dollars. There is no averment that the coal company has not paid up for all the stock which it holds or owns.

II. Appellants claim that the stockholders should be held individually liable for a failure to comply with the provisions of sections 1076 and 1077 of the Code. In *McKellar v. Stout*, 14 Iowa, 359, it was held that a failure to comply with the corresponding sections, 1161 and 1162, of the Revision does not render the private property of the stockholders liable for the debts of the corporation.

*1. CORPORATION: notice.*

III. It is further insisted that the stockholders are individually liable because of a failure to comply with the provisions of section 1078 of the Code, respecting the manner of keeping the books of the corporation. We are of opinion that for such failure the stockholders cannot be held individually responsible. If the books are fraudulently kept those guilty of participating in the fraud may be held personally liable under section 1071 of the Code.

*2. ——: books of the corporation.*

IV. It is insisted that the stockholders are liable individually, because the corporation incurred an indebtedness, exceeding two-thirds of its capital stock, in violation of the provisions of section 1061 of the Code. We discover nothing in the provisions of the statute justifying the conclusion that stockholders may be held individually liable for a violation of this section of the Code.

*3. ——: indebtedness.*

V. It is sought to hold the stockholders liable under sec-

**3. ——: construction company.** tion 1068 of the Code, for failure to comply with the provisions of sections 1062 and 1063, respecting the publication of the notice of the formation of the corporation. The latter clause of section 1068 provides: "But this section shall not be deemed applicable to railway corporations and corporators, and stockholders in railway companies shall be liable only for the amount of stock held by them in said companies."

The articles of incorporation of the Iowa & Minnesota Construction Company, attached to the petition, contain the following provision:

"Article 3. This corporation shall have the right and power to buy, assume, make, have, hold and execute any contract or contracts which it may be able to secure, for construction of the Iowa, Minnesota & North Pacific Railroad, or any part thereof, or any collateral and outlying and connecting railroad, and it shall have power and right to acquire, hold and transfer real and personal property, and own, operate and control the road or roads it may construct or acquire, and in all things pertaining to its business shall possess the same rights and privileges as private persons."

This article confers upon the corporation authority to construct a railroad, and to operate it. The construction company is a railway corporation under both the majority and minority opinions in *First National Bank of Davenport v. Davies*, 43 Iowa, 424. The stockholders, therefore, are not liable under section 1068.

VI. It is claimed that the stockholders of the construction company are individually liable, because of fraudulent representations as to the financial ability of the com-

**5. ——: another company as stockholder: fraudulent representations.** pany. The coal company defendant could not make any representation except through its officers. Its officers had no authority to make fraudulent representations as to the pecuniary ability of the construction company, and such representations would not render the

coal company liable as a stockholder in the construction company.

VII. The defendants Clark, Couch, D. Ryan and Robert Ryan are merely stockholders in the coal company. They did not individually become stockholders in the construction company by the coal company becoming such stockholder. The petition seeks to recover of them merely as stockholders. They are not such, and are not liable under the allegations of the petition.

The demurrers were properly sustained.

AFFIRMED.